Theodore E. **WALTHER**, Executor of the Estate of James A. Walther, Deceased, Appellant,

v.

**OMAHA PUBLIC POWER DISTRICT** and Floyd L. Neal, Appellees.

No. 19426.

United States Court of Appeals Eighth Circuit.

July 7, 1969.

John J. Higgins, Jr., of Eisenstatt, Morrison, Higgins, Miller, Kinnamon & Morrison, Omaha, Neb., for appellant, and filed brief; J. Patrick Green, Omaha, Neb., on the brief with Mr. Higgins.

Joseph K. Meusey, of Fraser, Stryker, Marshall & Beach, Omaha, Neb., for appellee, Omaha Public Power District; Robert G. Fraser, Omaha, Neb., was on the brief with Mr. Meusey.

A. G. Schatz, of Gross, Welch, Vinardi, Kauffman, Schatz & Day, Omaha, Neb., for appellee, Floyd Neal; Harold W. Kauffman, Omaha, Neb., was on the brief with Mr. Schatz.

Before BLACKMUN, GIBSON and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Appellant, the Illinois executor of a Nebraska decedent, brought a proper diversity action seeking damages on behalf of the decedent's widow and children for the alleged wrongful death of Major James A. Walther occurring on October 1, 1966, at Bellevue, a suburb of Omaha, Nebraska. The jury was asked to answer special interrogatories and, on the basis of those answers, the trial court dismissed the claim against both defendants. This timely appeal from the "judgment"[1] raises two issues, viz.: (1)

---

1. Post-verdict, Chief Judge Robinson denied the executor's motion for a new trial. The appeal was taken from that order. Such order denying a motion for new trial is generally not appealable. However, where, as here, the appeal is

claimed erroneous exclusion of certain expert testimony, and (2) alleged erroneous and prejudicial instructions to the jury. We affirm.

Walther, a 36-year-old major in the Strategic Air Command, sustained instantaneously fatal injuries while assisting his neighbor, the defendant Floyd Neal, install a metal flagpole in the backyard of the Neal home. A co-owner of the Neal property, Harold Mellon, who was also assisting, was electrocuted. Neal was injured. The Omaha Public Power District, the electric power supplier for the area, runs its 13,800 volt electric-distribution line in a north-south direction adjacent to the rear lot-line of the Neal residence. The electricity is transmitted through three wires attached to a T-type crossarm on a standard power pole. The crossarms are located in excess of twenty-five feet above the ground and it is conceded that the construction and maintenance of the line complied with industry-imposed requirements of the National Electric Safety Code.

At the time of the accident, Walther, Neal and Mellon were engaged in the process of erecting a thirty-foot metal flagpole in Neal's backyard. The flagpole had been laid against the top of a chain-link fence immediately beneath the wires. Walther and Mellon grasped the pole and, with their backs to the wires, walked toward Neal who was attempting to guide the base of the pole into a metal sleeve which was embedded in a concrete foundation approximately fourteen and one-half feet from the fence. Electric current coursed through the metal pole as it was being raised.

The suit alleged that the power company negligently designed the electric lines and that it failed to warn of dangers of high-voltage electricity. Appellant charged Neal with negligence in failing to warn of the danger and in failing to devise a safe plan for carrying on the work. The jury determined that the Omaha Public Power District was free of negligence and that both Walther and Neal were guilty of negligence which contributed to Walther's death in a substantial degree.[2]

otherwise properly taken and the intent of the appellant to appeal from the final judgment is clear, we may treat the appeal as if taken from the final judgment. See, Paluch v. Erie Lackawanna Railroad Co., 387 F.2d 996, 998, fn. 2 (3d Cir. 1968); 6A Moore's Federal Practice, ¶ 59.15 [1] (2d ed. 1966).

2. The interrogatories and the jury's answers include:
"Question No. [1]
 Do you find from a preponderance of the evidence that the defendant Omaha Public Power District was guilty of negligence in performing any one or more of the specific acts of negligence alleged by the plaintiff?
 Answer: No.
Question No. [2]
 Do you find from a preponderance of the evidence that the negligence of the defendant, Omaha Public Power District, was either the sole proximate cause or a contributing proximate cause of the injuries and death of James A. Walther?
 Answer: * * *
Question No. [3]
 Do you find from a preponderance of the evidence that the defendant, Floyd

Neal, was guilty of negligence in performing any one or more of the specific acts of negligence alleged by the plaintiff?
 Answer: Yes.
Question No. [4]
 Do you find from a preponderance of the evidence that the negligence of the defendant, Floyd Neal, was either the sole proximate cause or a contributing proximate cause of the injuries and death of James A. Walther?
 Answer: Yes.
Question No. [5]
 Do you find from a preponderance of the evidence that James A. Walther, deceased, was guilty of negligence in performing any one or more of the specific acts of negligence alleged by the defendants?
 Answer: Yes.

Question No. [6]
 Do you find from a preponderance of the evidence that the negligence of James A. Walther was either the sole proximate cause or a contributing proximate cause of his injuries and resulting death?
 Answer: Yes.

## I.

Appellant contends his case was prejudiced by an incorrect ruling of the trial court which prevented him from introducing opinion testimony of an electrical contractor, John Reed, who was prepared to testify that the metal flagpole did not come into direct contact with the electric wires. Reed had more than thirty years experience as an electrician and he included among his qualifications filling the post of Chief Electrician for the City of Omaha. Reed did not possess a college degree in electrical engineering and, in practice, he had worked only with low-voltage electric conductors. According to the offer of proof, he would have testified that there had been no contact between the flagpole and the live wire because no hole had been burned in the flagpole and because, upon contact with the flagpole, the electric wire would have been severed. He felt that marks on the brass sleeve in which the pole was being placed indicated that electric current had traveled from the wires to the flagpole by means of arcing rather than by direct contact.

After the exclusion of such proposed testimony, appellant called R. Le Bron, an electrical contractor with a degree in electrical engineering. He opined that there had, indeed, been no direct contact between the steel pole and the wire. The electric current which killed Walther and Mellon and injured Neal had arced between the electric wire and the flagpole.

Any error in the rejection of Reed's proffered testimony was cured by the admission of contractor Le Bron's opinions. Improper exclusion of expert testimony does not generally rise to the level of prejudicial error where the opinions sought to be adduced are proffered in other testimony. Fed.R.Civ.P. 61; Lowe v. Taylor Steel Products Co., 373 F.2d 65, 69 (8th Cir. 1967), cert. denied, 389 U.S. 858, 88 S.Ct. 85, 19 L. Ed.2d 122 (1967); Ackelson v. Brown, 264 F.2d 543, 546–547 (8th Cir. 1959). See also, Joseph A. Bass Co. v. United States, to Use of Peter Kiewit Sons' Co., 340 F.2d 842, 845 (8th Cir. 1965). The testimony which the appellant sought to introduce through Reed, which was in fact introduced through Le Bron, did not directly bear on an ultimate fact. Such testimony in this record would have been cumulative. We distinguish these facts from Harris v. Smith, 372 F.2d 806 (8th Cir. 1967), in which we held that the erroneous exclusion of evidence, cumulative in effect, tending to prove an ultimate fact required a new trial.

## II.

With regard to the instructions, appellant asserts that the trial court erred in its exposition of the law of negligence and proximate cause.

(A) Appellant objects to isolated phrases, taken out of the context of the instructions, which, he claims, suggest that defendant power company could be held liable in this case only if it anticipated this particular event rather than merely failed to guard against a foreseeable risk.

Question No. [7]
Do you find from a preponderance of the evidence that the negligence, if any, of plaintiff's decedent, James A. Walther, was slight and that the negligence, if any, of the defendant, Omaha Public Power District, was gross in comparison?
Answer: No.
Question No. [8]
Do you find from a preponderance of the evidence that the negligence, if any, of plaintiff's decedent, James A. Walther, was slight and that the negligence, if any, of defendant Floyd L. Neal was gross in comparison?
Answer: No.
Question No. [9]
Using 100% as the total combined negligence which acted as a sole proximate cause or a contributing proximate cause of the injuries and resulting death of James A. Walther, what proportion of the total combined negligence do you find from the evidence is attributable to plaintiff's decedent, James A. Walther?
Answer: 50 per cent."

With reference to the electric company's duty, the court said:

"A power company, such as the defendant Omaha Public Power District, engaged in the transmission of electricity is required to exercise reasonable care in the construction and maintenance of its lines. The degree of care varies with the circumstances, but it must be commensurate with the dangers involved, and where wires are designed to carry electricity of high voltage, the law imposes upon the company the duty of exercising the utmost care and prudence consistent with the practical operation of its business to avoid injury to persons and property. You are instructed, however, that electric companies are not insurers of the safety of the public and hence are not liable unless they are guilty of some negligent act or omission. Such companies must anticipate and guard against events which may reasonably be expected to occur, and the failure to do so is negligence. A failure to anticipate and guard against a happening which would not have arisen except under *exceptional or unusual circumstances is not negligence.*

\* \* \* \* \* \*

You are instructed that negligence to be actionable must be such that the injury complained of might reasonably have been foreseen or anticipated.

You are instructed one need not guard against that which a reasonably prudent person under the circumstances would not anticipate as *likely to happen.*

You are instructed that defendant Omaha Public Power District contends it could not reasonably foresee or anticipate that a flag pole would be installed by the land owner which would be of such height as to pass in proximity to its lines while the said flag pole was being installed. In this connection you are instructed that the test of negligence or the absence of negligence on the part of defendant was not that it should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable activity being done upon the property of defendant Neal by persons who had a right to be there either for work, pleasure or business." (Emphasis added.)

These instructions appear to be taken almost verbatim from Roos v. Consumers Public Power District, 171 Neb. 563, 106 N.W.2d 871 (1961), in which the Nebraska Supreme Court enunciated the duty of an electric power supplier to use reasonable care as follows:

"A power company engaged in the transmission of electricity is required to exercise reasonable care in the construction and maintenance of its lines. The degree of care varies with the circumstances, but it must be commensurate with the dangers involved, and where wires are designed to carry electricity of high voltage, the law imposes upon the company the duty of exercising the utmost care and prudence consistent with the practical operation of its business to avoid injury to persons and property. \* \* \* Electric companies are not insurers of the safety of the public and hence are not liable for injuries unless guilty of some wrongful act or omission. \* \* \* Such companies, being engaged in the transmission of a dangerous commodity, must anticipate and guard against events which may reasonably be expected to occur, and a failure to do so is negligence. A failure to anticipate and guard against a happening which would not have arisen except under exceptional or unusual circumstances is not negligence. \* \* \* 'The law does not require impossibilities of such companies in avoiding accidents and resulting injuries. In the erection and maintenance of their poles, wires, and other appliances, they are bound to anticipate only such combinations of circumstances and ac-

cidents and injuries therefrom as they may reasonably forecast as likely to happen, taking into account their own past experience and the experience and practice of others in similar situations, together with what is inherently probable from the condition of their appliances as they relate to the conduct of their business.' 18 Am. Jur., Electricity, s. 53, p. 448." 106 N.W.2d at 876–877. (Case citations omitted.)

Appellant concedes that the concluding paragraph of the questioned jury instruction was not improper in advising that the test of negligence required the power supplier to "have foreseen the probability that injury might result from any reasonable activity being done upon the property * * *" Additionally, that instruction noted that the power supplier need not have anticipated the particular act from which the injury resulted as a basis for determining its liability. In attempting to explain negligence and proximate cause in terms of foreseeability of the risk, the court is dealing with concepts that are not easily explainable. In these instructions, the lower court, in calling attention to the duty of "utmost care imposed upon an electric supplier", used language limiting the outer boundary of the power company's duty. In light of *Roos*, we feel that the trial court's instruction on this matter was not erroneous.

It is also appropriate to observe that the plaintiff failed to call the trial court's attention to the claimed error relating to these instructions and he may be precluded from raising the error here. Fed.R.Civ.P. 51. See, Continental Cas. Co. v. Jackson, 400 F.2d 285, 292 (8th Cir. 1968); Cone v. Beneficial Standard Life Ins. Co., 388 F.2d 456, 459–460 (8th Cir. 1968); Weir v. Simmons, 357 F.2d 70, 74 (8th Cir. 1966); Andrews v. Olin Mathieson Chemical Corp., 334 F.2d 422, 429 (8th Cir. 1964).

(B) Appellant further claims that the trial court erred in that it failed to instruct the jury on the issue of concurrent cause. The instructions on causation included the following:

" 'Proximate Cause,' as used in the law of negligence is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred.

This does not mean that the law recognizes only one proximate cause of an injury or damage, consisting of only one factor or thing, of the conduct of only one person. On the contrary, many factors, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause injury or damage; and in such a case, each may be a proximate cause."

Special interrogatory questions 1, 2, 3, 4, 7, and 8 (fn. 2, *supra*) required the jury to evaluate the negligence of each alleged tort-feasor and the contributory negligence of Walther. The jury separately found the defendant electric supplier to be free of negligence; Neal to be guilty of negligence; and Walther to be contributorily negligent. The executor now asserts that his requested instruction No. 2, reading:

"If the defendant, Omaha Public Power District, was negligent, and said negligence combined with the acts or omissions of others than plaintiff or defendant to produce injury, then said defendant is liable in the same manner and to the same extent, as if its negligence were the only cause. Therefore, if you find defendant was negligent and such negligence was a cause of the accident, regardless of what acts or omissions of third persons may have combined with the defendant's negligence to produce the result, defendant would be liable for the entire damage suffered."

was not given verbatim. Such claim of error was not preserved since the trial court's attention was not specifically called to the alleged omission. Fed.R.

Civ.P. 51; Cone v. Beneficial Standard Life Ins. Co., *supra*.

 Basically, the only difference between the instruction given and that requested is that the last sentence of the requested instruction notified the jury of the legal effect of concurrent negligence. Such information is unnecessary to the jury's function of specific fact-finding. When a special verdict is used, the court need give the jury only such explanation and instructions as may be necessary to enable the triers of fact to make intelligent findings. See, Great American Ins. Co. v. Horab, 309 F.2d 262, 266 (8th Cir. 1962); Concord Co. v. Willcuts, 125 F.2d 584, 589 (8th Cir. 1942), cert. denied, 316 U.S. 705, 62 S. Ct. 1309, 86 L.Ed. 1773 (1942); 5 Moore's Federal Practice, ¶ 49.03[3] (2d ed. 1968). There is no merit to appellant's contention on this issue.

(C) Finally, the executor complains that the issue of unavoidable accident was erroneously interjected into the instructions. He urges here, as he did to the trial judge, that there was no basis to submit such issue to the jury.

After defining negligence and explaining contributory negligence, the court instructed the jury that:

"The mere fact that an accident happens raises no presumption of negligence upon the part of anyone involved in such accident. In other words, the law recognizes that accidents will happen which because of conditions or circumstances are unavoidable and that such accidents may happen without the fault or negligence of any party. Therefore, in this case, the mere fact that an accident did happen should raise no presumption in your minds of the existence of any negligence upon the part of any of the persons involved."

We would agree that unavoidable accident was not a proper issue in this case. Of the many tragic deaths and serious injuries, as exemplified by the many reported cases on the subject,[3] few such accidents can be considered unavoidable. Generally, these cases disclose an unawareness of danger by the victim which has combined with insufficient warnings by power companies to produce very tragic results. Unfortunately, little effort is expended in our society to constantly remind the public of the great hazard accompanying the transmission and distribution of electric current.[4] Yet, miles and miles of such lines run along the streets and alleys of almost every city and village and across the vast rural reaches of our country.

 As used here, the words "unavoidable accident" were merely part of the trial court's explanation to the jury that there was no presumption of negligence against anyone by the mere occurrence of an accident and the instructions did not otherwise present the issue of unavoidable accident to the jury. Similar explanations of the concept of negligence have been used in Nebraska trial courts and such use has been held not reversible error. McKinney v. County of Cass, 180 Neb. 685, 144 N.W.2d 416, 423 (1966); Wright v. Lincoln City Lines, Inc., 163 Neb. 679, 81 N.W.2d 170, 175–176 (1957); Harding v. Hoffman, 158 Neb. 86, 62 N.W.2d 333, 341 (1954). In *McKinney*, the Nebraska court said with respect to a similar instruction:

"Although the giving of instruction No. 15 was unnecessary, there was no prejudicial error since the jury was properly instructed upon the burden of proving the negligence charged as a proximate cause of the injury." 144 N.W.2d at 423.

Although, under applicable law, we do not deem the instruction to be erroneous, this determination does not reflect our approval of interjecting the concept of

3. See for example, Annotation, 69 A.L.R. 2d 9 (1960).

4. According to the United States Public Health Service, *Vital Statistics of the* *United States*, 9,725 accidental deaths were caused by electrocution during the ten-year period 1958 through 1967.

"unavoidable accident" into a negligence case under ordinary circumstances. Such language may permit a jury to unfairly speculate that the particular accident was a matter of predestination or inevitability rather than to concentrate on the issues pleaded.

The appellant has demonstrated no prejudicial error. The trial court properly denied the appellant's motion for a new trial and the judgment is affirmed.

Affirmed.